UNITED STATES BANKRUPTCY COURT                    **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                              :        Chapter 11
                                                    :
NEW 118TH LLC, et al.,                              :        Case No. 07-12333 (SMB)
                                                    :        (Jointly Administered)
                        Debtors.                    :
-------------------------------------------------------------X
JOREMI ENTERPRISES, INC., ZEV COHEN                 :
& ASSOCIATES, INC., QUALIFIED                       :
RETIREMENT PLAN, COHEN PROPERTIES                   :
OF CENTRAL FLORIDA, LTD., ZEV COHEN                 :
& GAIL COHEN, TENANTS BY THE                        :
ENTIRETY, INDIVIDUALLY AND ON                       :
BEHALF OF ALL THOSE INVESTORS IN                    :
MORTGAGES ORIGINATED BY THE                         :
KINGSLAND GROUP, INC., ON 16                        :
PROPERTIES IN MANHATTAN,                            :
                                                    :
                        Plaintiffs,                 :
                                                    :
        -- against --                               :        Adv. Pro. No. 07-3064
                                                    :
MICHAEL HERSHKOWITZ, IVY TURK a/k/a                 :
IVY WOOLF-TURK, and ROBERT LOBEL,                   :
                                                    :
                        Defendants.                 :
-------------------------------------------------------------X


## MEMORANDUM DECISION GRANTING REMAND

**A P P E A R A N C E S :**

LEDERMAN ABRAHAMS & LEDERMAN, LLP
Special Real Estate Counsel and Special Litigation Counsel
        to the Official Committee of Unsecured Creditors
567 Broadway
Massapequa, NY 11758

        Bruce H. Lederman, Esq.
                Of Counsel

PELOSI WOLF EFFRON & SPATES LLP
Attorneys for Defendant Robert Lobel
Woolworth Building
233 Broadway, 22nd Floor
New York, NY 10279

  Alan Effron, Esq.
    Of Counsel

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge**

  The plaintiffs instituted an action in the Supreme Court of the State of New York, New York County (the "State Court Action") against New 118th LLC, a number of its affiliates, several financial institutions, the City and State of New York and three individuals, Michael Hershkowitz ("Hershkowitz"), Ivy Woolf-Turk ("Turk") and Robert Lobel ("Lobel") (collectively, the "Individual Defendants"). After the Court entered an order for relief against the affiliated debtors, the plaintiffs removed the State Court Action to the District Court pursuant to 28 U.S.C. § 1452(a), which referred it to this Court, and the State Court Action morphed into this Adversary Proceeding. The plaintiffs thereafter assigned the proceeds of their claims to the debtors' estates, and filed their Amended Complaint, dated Mar. 5, 2008. (ECF Doc. # 12.) The Amended Complaint dropped all of the defendants other than the Individual Defendants.

  Lobel has moved to remand the Adversary Proceeding. For the reasons that follow, the Court grants the part of Lobel's motion for remand based upon principles of mandatory abstention.

# BACKGROUND[1]

At all relevant times, and except for The Kingsland Group, Inc. ("Kingsland"), the debtor defendants in the State Court Action (collectively, the "Property Owner Debtors")[2] owned 16 parcels of real property located in metropolitan New York.  (¶ 14.)[3]  The Individual Defendants were shareholders or managing members and equity owners of each of the Property Owner Debtors.  (¶¶ 18, 19, 24, 25, 30, 31.)  In addition, the Individual Defendants were shareholders, officers and directors of Kingsland.  (¶¶ 20-22, 26-28, 32-34.)

Beginning in 2003, Hershkowitz and Turk advised certain plaintiffs (collectively, "Joremi") that the Individual Defendants were planning to develop large, multi-family properties on the parcels owned by the Property Owner Debtors.  (¶ 37.)  The Individual Defendants offered to sell percentage interests in "bona fide recorded first mortgages" on the new multi-family developments, and Joremi eventually purchased $78 million worth of mortgages on the 16 properties.  (¶¶ 1, 38.)  The Individual Defendants personally guaranteed each mortgage note, agreeing to pay 15% of the outstanding principal amounts.  (¶¶ 39, 59.)

---

[1]    The "Background" discussion is based on the <u>Verified Complaint</u>, dated May 21, 2007 (the "Complaint"), which is attached to the <u>Response of Adversary Proceeding Plaintiffs and the Official Committee of Unsecured Creditors to Motion to Remand Filed by Robert Lobel</u>, dated July 30, 2008 ("<u>Response</u>"), at Ex. A (ECF Doc. # 33), and the various submissions of counsel.  The procedural background is not in dispute, and the discussion of the underlying factual allegations is not intended to constitute findings of fact.

[2]    The Property Owner Debtors included New 118th, LLC, HWJ 152 Corp., KG 179 Corp., KG Audobon, Inc., MDI 176 Corp., 72 Pinehurst Corp., MDI 168 Corp., MDI 507/559 LLC, KGP 180 LLC, MDI 234-236 LLC, MIDD 159th LLC, KG 184th LLC, MDI 190 LLC, MDI 188 LLC, MDI 515 LLC, and KGP 520 LLC.

[3]    The parenthetical notation "(¶ _)" refers to the paragraphs in the Complaint.

The sale of the mortgages was part of a fraudulent scheme. Contrary to the Individual Defendants' representations, the mortgages were unrecorded, and were never intended to be recorded. (¶ 40.) In fact, the Individual Defendants were contemporaneously granting first mortgages to institutional lenders who duly recorded them. (Id.) To advance the scheme, the Individual Defendants sent Joremi investment binders that contained fraudulent, falsified and misleading documents indicating that the mortgages that Joremi was buying had been recorded. (¶¶ 41-43, 66.)

## A.    The State Court Action

On May 21, 2007, Joremi commenced the State Court Action against the Property Owner Debtors, Kingsland, the Individual Defendants, North Fork Bank, Washington Mutual Bank, Dominion Financial Corporation, Israel Discount Bank, Intervest Mortgage Corporation, Intervest National Bank and the City and State of New York. Joremi proposed to certify a class of between 40 and 50 similarly situated lenders. (¶ 44.) The Complaint asserted causes of action, inter alia, to foreclose the unrecorded Joremi mortgages on the properties still owned by the Property Owner Debtors, to recover damages based on RICO, and to recover the approximate aggregate amount of $17.5 million from the Individual Defendants based on their personal guarantees (the "Guarantee Claims").

## B.    The Bankruptcy Proceedings

On July 30, 2007 and August 17, 2007, a group of petitioning creditors filed involuntary Chapter 11 cases against the Property Owner Debtors, Kingsland and 72 Kings Ave. Corp. The Court ordered relief, and Richard L. Wasserman was appointed

the Chapter 11 Trustee (the "Trustee").  The United States Trustee also appointed an

Official Committee of Unsecured Creditors (the "Committee").

The State Court Action was removed, as described earlier, on October 16, 2007.

Following removal, the Committee, the Trustee and Joremi entered into a stipulation (the

"Stipulation").  In relevant part, the Stipulation assigned all recoveries and proceeds of

the Adversary Proceeding to the debtors' estates, and authorized the Committee to

prosecute the Adversary Proceeding on behalf of Joremi.  (See Stipulation and Order,

dated March 5, 2008)(ECF Doc. # 11.)  The Court approved the Stipulation over Lobel's

objection.  (Id.)

Joremi subsequently filed the Amended Complaint, which dropped the other

defendants and was limited to the Guarantee Claims against the Individual Defendants.

On July 9, 2008, Turk filed an answer to the Amended Complaint asserting her rights

under the 5th and 14th Amendments to the United States Constitution and under the

comparable provisions of the Constitution of the State of New York, and declined either

to admit or to deny the allegations.  (See Answer and Affirmative Defenses of Defendant

Ivy Turk, dated July 9, 2008)(ECF Doc. # 22.)  On September 15, 2008, Joremi obtained

a default judgment against Hershkowitz.  (See ECF Doc. # 45.)

Before and after the filing of the Amended Complaint, Joremi and Lobel engaged

in "extensive settlement negotiations, with the knowledge and authorization of the

Trustee."  (Motion to Remand, dated June 30, 2008, at 3)(ECF Doc. # 19.)  The parties

apparently reached an agreement in principle, but the agreement fell thorough when, on

June 24, 2008, the Trustee objected to the settlement.  (Id.)

5

Six days later, Lobel moved to remand the Adversary Proceeding back to the state

court.  He contended that this Court lacked subject matter jurisdiction, and remand was

therefore required under 28 U.S.C. 1447(c).  In the alternative, Lobel argued that the

Court should abstain from hearing the Adversary Proceeding pursuant to 28 U.S.C. §

1334(c)(1) or (c)(2), and remand the case to state court pursuant to 28 U.S.C. § 1452(b).

**DISCUSSION**

**A.    Subject Matter Jurisdiction**

Section 1452(a) of title 28 authorizes any party to a state court civil action to

remove a claim or cause of action to the local district court provided that the claim or

cause of action meets the jurisdictional requirements of 28 U.S.C. § 1334.  In addition, 28

U.S.C. § 1447, which deals with the procedure following the removal of " the case,"

requires the district court to remand a case if the district court lacks subject matter

jurisdiction.  28 U.S.C. § 1447(c).  "There is no express indication in § 1452 that

Congress intended that statute to be the exclusive provision governing removals and

remands in bankruptcy," Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 129 (1995),

and the net effect of the two provisions is that the district court, and hence, the

bankruptcy court, must remand any removed claim or cause of action over which it lacks

subject matter jurisdiction.

Subject matter jurisdiction over a removed claim is determined by the facts

existing at the time of removal.  Certain Underwriters at Lloyd's, London v. ABB

Lummus Global, Inc., 337 B.R. 22, 25 (S.D.N.Y. 2005); In re WorldCom, Inc. Secs.

Litig., 294 B.R. 553, 556 (S.D.N.Y. 2003).  The post-removal Stipulation and Amended

Complaint are, therefore, immaterial.  The question comes down to whether the

Guarantee Claim asserted by Joremi against Lobel in the State Court Action fell within §

1334.  See Halper v. Halper, 164 F.3d 830, 837 (3d Cir. 1999)("To determine the extent

of the Bankruptcy Court's jurisdiction in this case we must examine each of the five

claims presented to ascertain if it is core, non-core, or wholly unrelated to a bankruptcy

case."); Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.), 219

B.R. 363, 368 (Bankr. S.D.N.Y. 1998)("[T]he core/non-core determination may vary

from claim to claim.").

### 1.     Core Jurisdiction

Bankruptcy core jurisdiction extends to all civil proceedings arising under title 11

or arising in a case under title 11.  See 28 U.S.C. § 157(b)(1)("Bankruptcy judges may

hear and determine . . . all core proceedings arising under title 11, or arising in a case

under title 11. . . ."); Wood v. Wood (In re Wood), 825 F.2d 90, 96 (5th Cir.

1987)("[S]ection 157 apparently equates core proceedings with the categories of 'arising

under' and 'arising in' proceedings.")  Generally, a core proceeding is one that invokes a

substantive right under title 11, or could only arise in the context of a bankruptcy case.

Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 162-63

(3d. Cir. 2004); Wood, 825 F.2d at 96-97.

The Court plainly lacks core jurisdiction over the Guarantee Claim against Lobel.

The cause of action did not arise under title 11, and did not arise in this bankruptcy case.

It is a garden-variety state law claim between non-debtor parties.

7

## 2.    Non-Core Jurisdiction

A proceeding is "related to" a case under title 11, and falls within its non-core jurisdiction,[4] if the outcome might have a "conceivable effect" on the estate.  Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992); see U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.), 301 F.3d 296, 304 (5th Cir. 2002); Pacor, Inc. v. Higgins (In re Pacor, Inc.), 743 F.2d 984, 994 (3d Cir. 1984).  "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  Pacor, 743 F.3d at 994; accord Beebe Int'l, Inc. v. French Am. Banking Corp., (In re Wedtech Corp.), 72 B.R. 313, 315-16 (Bankr. S.D.N.Y. 1987).

As a rule, guarantee claims are considered to be "related to" the bankruptcy case based on one of two rationales.  First, if the creditor recovers from the guarantor, the creditor's claim against the estate will be reduced or eliminated, and the guarantor will succeed to a corresponding claim based on principles of subrogation, common law indemnification or reimbursement.  Merrill Lynch Mortgage Capital Inc. v. Esmerian, No. 08 Civ. 5058 (NRB), 2008 WL 2596369, at *1 (S.D.N.Y. June 30, 2008); see Nat'l Acceptance Co. of Cal. v. Levin, 75 B.R. 457, 459 (D. Ariz. 1987)(non-core jurisdiction exists over suit by creditor against non-debtor guarantors because "a finding of liability against the [guarantors] on the guaranty is more than a precursor of potential liability on the part of [the estate] to [the guarantors]").  The outcome of the suit may alter the makeup of the creditor body, Boco Enters.,  Inc. v. Saastopankkien Keskus-Osake-

---

[4]        "Related to" proceedings correspond to the Court's non-core jurisdiction.  Resorts Int'l, 372 F.3d at 162; see Wood, 825 F.2d at 97.

Pankki (In re Boco Enters., Inc.), 204 B.R. 407, 410 (Bankr. S.D.N.Y. 1997)("[T]he outcome of the creditor's action against the guarantor affects that 'creditor's status vis a vis other creditors' and, therefore, affects administration of the estate.")(quoting Pacor, 743 F.2d at 995), and even if it does not affect the net amount of debt, it will directly affect the estate's administration of the case.

Second, "related to" jurisdiction has also been found where the guaranty action will not necessarily result in a mere substitution of creditors. The reimbursement claim may stand on a different footing because it is for a different amount, or the debtor can assert defenses against the guarantor that it cannot assert against the common creditor. E.g., Randall & Blake, Inc. v. Evans (In re Canion), 196 F.3d 579, 585-86 (5th Cir. 1999)(judgment creditor's claim against the debtor's guarantors was "related" to the bankruptcy case because if plaintiffs succeeded, "the total amounts due on claims against [the debtor's] bankruptcy estate would be decreased," and the debtor might have a defense of unclean hands to the guarantor's reimbursement claim); Blackacre Bridge Capital LLC v. Korff (In re River Ctr. Holdings, LLC), 288 B.R. 59, 66 (Bankr. S.D.N.Y. 2003)(non-core jurisdiction exists over guaranty claim where guarantor's reimbursement claim may include legal fees, and guarantor could not assert defenses available to the creditor); Burns v. First Citizens Bank & Trust Co. (In re Rainbow Sec. Inc.), 173 B.R. 508, 511-12 (Bankr. M.D.N.C. 1994)(noting that "the estate might very well have defenses against the third-party defendants, as officers, shareholders and insiders of the debtor corporation, which it would not have if First Citizens were the creditor"); cf. Adams Vessel (Bilbao) Ltd. v. Torch, Inc., No. Civ. A. 04-3471, 2005 WL 1431711, at *2 (E.D. La. May 19, 2005)(non-core jurisdiction exists over creditor's

action against insider guarantor because if the defendant guarantor replaced the plaintiff as the creditor the guarantor's "'insider' status under 11 U.S.C. § 1129(a)(10) would inhibit it from voting on the acceptance of the plan.").

These principles compel the conclusion that the Court had non-core jurisdiction over the Guarantee Claim against Lobel at the time of removal.  As noted, Lobel had a guarantor's common law right of reimbursement when the Guarantee Claim was removed.  See Pro-Specialties, Inc. v. Thomas Funding Corp., 812 F.2d 797, 800 (2d Cir. 1987)("[W]hen a party agrees to become a guarantor at the behest of the principal obligor, a promise to indemnify-even though not expressly provided for in the contract-is implied by law.")  If Lobel had paid Joremi, he would have succeeded to Joremi's rights to the extent of the payment.[5]  In addition, Joremi has made claims that Lobel participated in a scheme to defraud.  The estates may have equitable defenses against Lobel, or his reimbursement claim may be subject to equitable subordination.  Although Lobel doubtless disputes this outcome, the outcome of the Guaranty Claim may nonetheless have a "conceivable effect" on the debtors' estates.

Finally, Lobel's principal contrary authority is distinguishable.  In Work/Family Directions, Inc. v. Children's Discovery Ctrs., Inc. (In re Santa Clara County Child Care Consortium), 223 B.R. 40 (1st Cir. B.A.P. 1998)("Santa Clara"), the creditor brought a declaratory judgment action seeking a determination that the guarantor was liable on the guaranty.  The Bankruptcy Appellate Panel concluded that the bankruptcy court lacked "related to" jurisdiction because "[t]he outcome of the state court proceeding will not

---

[5]      The deadline for filing claims expired on February 29, 2008, after the State Court Action had been removed.  Lobel had the right, therefore, to file a contingent reimbursement claim at the time of removal. He did not, presumably to avoid submitting himself to the Court's core jurisdiction.

have a substantial and direct financial impact upon the reorganization proceeding; rather, it will merely determine the validity and enforceability of a guaranty between two creditors of the debtor." <u>Id.</u> at 49.  In contrast, Joremi seeks more than a declaratory judgment; it seeks to recover a money judgment from Lobel, triggering his reimbursement rights.  In addition, while <u>Santa Clara</u> acknowledged <u>Pacor</u>'s "any conceivable effect" standard, it applied a much stricter test, basing its jurisdictional conclusion on the determination that the state court action would "not have a substantial and direct financial impact" on the bankruptcy case.  <u>Id.</u>

Accordingly, the Court concludes that it has non-core jurisdiction over the Guarantee Claim.

**B.      Mandatory Abstention**

Although the Court has subject matter jurisdiction over the Guarantee Claim against Lobel, it may nonetheless be required to abstain from hearing it.  Under 28 U.S.C. § 1334(c)(2):

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The Court must abstain if

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be "timely adjudicated" in state court.

N.Y. City Employees' Retirement Sys. v. Ebbers (In re WorldCom, Inc. Secs. Litig.), 293

B.R. 308, 331 (S.D.N.Y. 2003).  The principles of mandatory abstention apply to

removed actions.  Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 446-47 (2d Cir.

2005).

The Court has already concluded that it has non-core jurisdiction.[6]  In addition,

the parties do not dispute that the Guarantee Claim is based on state law, the sole basis of

this Court's jurisdiction is 28 U.S.C. § 1334, and an action – the State Court Action – was

commenced in state court, even though it is no longer pending there.  Instead, Joremi

contends that the remand motion was not timely, and cannot be timely adjudicated in

state court.

### 1.    Timeliness of Motion

The State Court Action was removed on October 16, 2007.  Lobel did not file this

motion until June 30, 2008.  He argues that timeliness should be judged from the filing of

the Amended Complaint – on March 8, 2008 – because that is when Joremi dropped all

claims other than those subject to abstention.  In addition, Lobel argues that any delay in

filing this motion was reasonable because he believed a settlement was possible, and was

involved in negotiations with Joremi throughout this time.  (Motion to Remand at 7;

Reply Memorandum of Law to Supplemental Response to Motion to Remand, dated

Sept. 12, 2008 ("Supp. Reply"), at 3-4)(ECF Doc. # 43.)

---

[6]      This conclusion focused on the existence of jurisdiction at the time of removal.  Neither party has
suggested that I should focus on the existence of jurisdiction at a different time in deciding the
jurisdictional question for purposes of mandatory abstention.

Section 1334(c)(2) does not define "timely,"[7] and courts apply a case-by-case approach. Channel Bell Assocs. v. W.R. Grace & Co., No. 91 Civ. 5485 (PKL), 1992 WL 232085, at *5 (S.D.N.Y. Aug. 31, 1992). The relevant considerations include (1) whether the movant "moves as soon as possible after he or she should have learned the grounds for such a motion," Novak v. Lorenz (In re Novak), 116 B.R. 626, 628 (N.D. Ill. 1990); accord Channel Bell Assocs., 1992 WL 232085, at *5; Personette v. Kennedy (In re Midgard Corp.), 204 B.R. 764, 776 (10th Cir. B.A.P. 1997); AHT Corp. v. Bioshield Techs., Inc. (In re AHT Corp.), 265 B.R. 379, 384 (Bankr. S.D.N.Y. 2001); see Waugh v. Eldridge (In re Waugh), 165 B.R. 450, 452 (Bankr. E.D. Ark. 1994)(denying motion to abstain filed 4 months after the complaint was filed where there was complete lack of evidence that motion could not have been filed earlier), (2) whether the moving party has already invoked the substantive process of the federal court on a matter going to the merits of the complaint, and in particular, moved for abstention only after receiving an unfavorable outcome, see First Bank v. Arafat, Civ. A. No. H-05-4337, 2006 WL 2612746, at *3 (S.D. Tex. Sept. 11, 2006)(denying motion to abstain made eight months after commencement of the case, and after the movant had conducted two depositions and its motion for summary judgment); Veldekens v. GE HFS Holdings, Inc. (In re Doctors Hosp. 1997, L.P.), 351 B.R. 813, 843 (Bankr. S.D. Tex. 2006)(denying remand motion filed motion more than eight months after removal and after the bankruptcy court had, "at their request, held a lengthy, full day hearing on their Application for a Preliminary

---

[7] Section 1447(c) requires that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . ." The § 1447(c) time limit does not, however, apply to remand motions under § 1452. See Cargill, Inc. v. Man Fin., Inc. (In re Refco, Inc.), 354 B.R. 515, 520 (8th Cir. B.A.P. 2006); Marineau v. Alvey (In re Etheridge), Adv. Proc. No. 06-3130-tmb, 2006 WL 4528540, at *4 (Bankr. D. Or. July 21, 2006); Unico Holdings, Inc. v. Nutramax Prods., Inc., 264 B.R. 779, 786 (Bankr. S.D. Fla. 2001); Texas Gulf Trawling Co., Inc. v. RCA Trawlers & Supply, Inc. (In re Ciclon Negro, Inc.), 260 B.R. 832, 835-36 (Bankr. S.D. Tex. 2001); Billington v. Winograde (In re Hotel Mt. Lassen), 207 B.R. 935, 939 (Bankr. E.D. Cal. 1997).

Injunction-which resulted in a ruling against them-and after all three Defendants had filed

Motions for Summary Judgment."); <u>AHT Corp.</u>, 265 B.R. at 384 (denying motion to

abstain after movant received an adverse ruling on its motion to transfer), and (3)

"whether the granting of the motion would prejudice or delay the rights of others."

<u>Paxton Nat'l Ins. Co. v. British Am. Assocs. (In re Pacor, Inc.)</u>, 72 B.R. 927, 932 (Bankr.

E.D. Pa 1987), <u>aff'd</u>, 86 B.R. 808 (E.D. Pa. 1987); <u>accord</u> <u>Deep v. Boies</u>, No. 1:05-CV-

1187 (FJS/RFT), 2007 WL 169940, at *2 (N.D.N.Y. Jan. 17, 2007); <u>Gassman v.</u>

<u>Gassman, Griper & Golodny</u>, No. 097 Civ. 0093 (RO), 1997 WL 603439, at *1 n. 5

(S.D.N.Y. Sept. 30, 1997).

Lobel knew about grounds for mandatory abstention at the time of removal, and

the Amended Complaint did not change anything.  Thus, the first consideration weighs

against him.  The other factors, however, weigh in his favor.  Lobel did not move earlier

because the parties were discussing a settlement that would have made the motion

unnecessary.  Joremi did not deny that these settlement negotiations took place.  (<u>See</u>

<u>Supplemental Response of Adversary Proceeding Plaintiffs and Official Committee of</u>

<u>Unsecured Creditors to Motion to Remand Filed by Robert Lobel</u>, dated Aug. 22, 2008

("<u>Supp. Response</u>"), at 5)(ECF Doc. # 37.)  Once Lobel learned that the settlement would

not materialize, he filed the remand motion within one week.  In addition, Lobel never

invoked the substantive processes of the Court.  Finally, Joremi did not point to any

prejudice if this matter is remanded.

### 2.    Timely Adjudication

Lobel also contends that the action can be timely adjudicated in the state court.

He notes that the Commercial Division routinely determines such claims in a timely

fashion.  (<u>Supp. Reply</u> at 6.)  Joremi counters that abstention would be a waste of judicial

resources where, as here, the Court has "great familiarity with the issues," (<u>Response</u> at

16), and has already ruled on a motion for default judgment against Hershkowitz.  (<u>Supp.</u>

<u>Response</u> at 7.)  Joremi also maintains that the state court would have to address

numerous procedural issues to bring the case to the same posture as it is before this

Court.  Joremi points to the "months" it would take "to have the case reassigned to the

proper IAS Judge in state court," and "calendared for a pre-motion conference."  (<u>Id.</u>)

   "There is no clear consensus as to what constitutes 'timely adjudication.'"

<u>Marine Midland Bank v. Zurich Ins. Co. (In re Olympia & York Maiden Lane Co. LLC</u>),

No. 98-9155A, 1999 WL 58581, at *7 (Bankr. S.D.N.Y. Jan 25, 1999); <u>accord</u> <u>Vornado</u>

<u>Realty Trust v. Stop & Shop Supermarket Cos., Inc. (In re Bradlees, Inc.</u>), No. 04 Civ.

5500 (HB), 2005 WL 106794, at *7 (S.D.N.Y. Jan. 19, 2005).  Generally, courts focus on

the status and needs of the bankruptcy case rather than any particular time guideline.

<u>Bradlees, Inc.</u>, 2005 WL 106794, at *7; <u>Olympia & York Maiden Lane Co. LLC</u>, 1999

WL 58581, at *7.  This entails consideration of the nature of the bankruptcy case and

whether the resolution of the litigation in state court will affect its administration.  In

<u>World Solar Corp. v. Steinbaum (In re World Solar Corp.</u>), 81 B.R. 603 (Bankr. S.D. Cal.

1988), the court explained:

> In deciding whether a matter may be timely adjudicated, perhaps
> the single most important factor is the nature of the underlying chapter
> proceeding.  In a Chapter 7 proceeding, the primary concern of the court is
> the orderly accumulation and distribution of the assets of the estate.  There
> is no administrative urgency or plan of reorganization to facilitate.  In an
> adversary proceeding related to a Chapter 7 proceeding, timely
> adjudication can be weighed relatively lightly.  By contrast, where a
> Chapter 11 reorganization is pending, the court must be sensitive to the
> needs of the debtor attempting to reorganize.

Id. at 612; accord Silverman v. Gen. Ry. Signal Co. (In re Leco Enters., Inc.), 144 B.R.

244, 251 (S.D.N.Y. 1992); see Certain Underwriters at Lloyd's, London, 337 B.R. at 27

("timely adjudication" factor satisfied where the dispute is not intertwined with a pending

bankruptcy proceeding, is not complex, and is the type of dispute that the state court can

adjudicate in a timely fashion); Midgard Corp., 204 B.R. at 778 ("Courts interpreting this

phrase [timely adjudication] have focused on whether allowing an action to proceed in

state court will have any unfavorable effect on the administration of a bankruptcy case.");

LFD Operating, Inc. v. Gen. Elec. Capital Corp. (In re Ames Dep't Stores, Inc.), Adv.

Pro. No. 01-8153 (AJG), 2006 WL 1288586, at *12 (Bankr. S.D.N.Y. April 19,

2006)(same); E.S. Bankest, LLC v. United Beverage Fla., LLC (In re United Container

LLC), 284 B.R. 162, 174 (Bankr. S.D. Fla. 2002)("Courts interpreting this phrase have

not focused primarily on when the case would be tried but rather on whether allowing an

action to proceed in state court will have any unfavorable effect on the administration of

a bankruptcy case.").

Here, the dispute with Lobel will not affect the administration of the bankruptcy

case.  The Trustee has already confirmed a liquidating plan, and in "a chapter 11 case

with a confirmed liquidating plan, where the primary concern is the orderly accumulation

and distribution of assets, the requirement of timely adjudication is seldom significant."

Midgard Corp., 204 B.R. at 779; accord Caperton v. A.T. Massey Coal Co., Inc., 270

B.R. 654, 657 (S.D. W. Va. 2001); United Container LLC, 284 B.R. at 175; Smith Mech.

Contractors, Inc. v. Premier Hotel Dev. Group (In re Premier Hotel Dev. Group), 270

B.R. 243, 255 (Bankr. E.D. Tenn. 2001).

Moreover, the state court is as equally capable as this Court in liquidating the Guarantee Claim.  Initially, it is impossible to predict the speed at which the litigation might move through the state court.  It is sufficient to point out that the state courts often adjudicate guarantee claims.  Furthermore, the Guarantee Claim sounds like one ripe for summary judgment, and the state courts employ summary judgment procedures similar to our own.  Compare N.Y. C.P.L.R. 3212 (McKinney 2005) with FED. R. CIV. P. 56.  Finally, Joremi gives me too much credit for an advanced position on the learning curve.  I have not made any substantive decisions relating to the Guarantee Claim, and the entry of a default judgment against Hershkowitz did not provide me any "great familiarity with the issues."

Accordingly, Lobel's motion to remand the Guarantee Claim based on principles of mandatory abstention is granted.  Settle order on notice.

Dated: New York, New York
       November 13, 2008

                                /s/ *Stuart M. Bernstein*
                                STUART M. BERNSTEIN
                           Chief United States Bankruptcy Judge